DECISION AND JOURNAL ENTRY
{¶ 1} Appellant, Kimberly Popovich, has appealed from a judgment of the Summit County Court of Common Pleas, Juvenile Division, which terminated her parental rights to her child, C.P., and placed the child in the permanent custody of Summit County Children's Services Board ("CSB"). This Court affirms.
 {¶ 2} On January 5, 2001, CSB filed a sworn complaint in Juvenile Court alleging that C.P., born May 11, 2000, was dependent. The affidavit alleged that CSB had been involved with Appellant and the child since November 2000. Apparently, CSB had instituted a safety plan for Appellant. On or about January 4, 2001, CSB attempted to meet with Appellant, but Appellant allegedly took her mother's car keys and left town with the child. They were located in Columbus when the police arrested Appellant for driving without a license and on outstanding arrest warrants. The child, then eight months old, was taken into custody by the Columbus police pursuant to Juv.R. 6. The affidavit further alleged that Appellant had a significant mental health history, which required hospitalizations, and that the child lacked adequate parental care.
 {¶ 3} The trial court granted emergency custody to CSB, pending a shelter care hearing. Following that hearing, the trial court continued the child in the emergency temporary custody of CSB. Appellant was represented by counsel.[1] Genetic testing was ordered for the purported father and counsel was appointed for him. A guardian ad litem was appointed for the child.
 {¶ 4} A case plan was developed. The objectives for Appellant included: (1) participating in counseling/therapy and taking medication as prescribed; (2) building and utilizing a support system; and (3) completing a drug and alcohol assessment and following recommendations.
 {¶ 5} At the adjudication hearing, Appellant and the purported father essentially stipulated to the facts as stated in the complaint. The court entered a finding of dependency and custody was continued in CSB. The matter proceeded to a dispositional hearing on March 20, 2001. The court adopted the case plan as filed. The court found the existence of a parent-child relationship between the purported father and the child and ordered the father to provide support. At the conclusion of the hearing, temporary custody was granted to CSB.
 {¶ 6} On November 26, 2001, a motion for permanent custody was filed by CSB. A hearing on the motion was held before a magistrate on March 11, 2002 and October 16, 2002. The magistrate granted the motion for permanent custody and terminated the parental rights of Appellant and the father. Appellant filed objections. Ultimately, the trial court ruled on the objections and approved the decision of the magistrate, granting permanent custody to CSB and terminating Appellant's parental rights.
 {¶ 7} Appellant has timely appealed and assigned three errors for review. They will be considered together for ease of discussion.
 First Assignment of Error
"The Trial Court Erred In Finding That It Is In The Minor Child's Best Interest That She Be Placed In The Permanent Custody Of Csb As The Prosecution Failed To Meet Its Burden Of Proof Requiring Clear And Convincing Evidence"
 Second Assignment of Error
"The Trial Court Erred In Granting CSB's Motion For Permanent Custody Thereby Terminating The Parental Rights Of Appellant Hopkins As The Trial Court's Findings Are Against The Manifest Weight Of The Evidence Which Could Only Lead To One Conclusion That Being Contrary To The Judgment Of The Trial Court"
 Third Assignment of Error
"The Trial Court Erred In Granting CSB's Motion For Permanent Custody As Appellant Kimberly Popovich Substantially Complied With Her Case Plan Requirements"
 {¶ 8} When evaluating whether a judgment is against the manifest weight of the evidence in a juvenile court, the standard of review is the same as that in the criminal context. In re Ozmun (Apr. 14, 1999), Summit App. No. 18983, unreported, at 3. In determining whether a criminal conviction is against the manifest weight of the evidence:
The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." State v. Thompkins (1997), 78 Ohio St.3d 380, 387, quotingState v. Martin (1983), 20 Ohio App.3d 172, 175.
 {¶ 9} Moreover, "[e]very reasonable presumption must be made in favor of the judgment and the findings of facts [of the trial court]."Karches v. Cincinnati (1988), 38 Ohio St.3d 12, 19. Furthermore, "if the evidence is susceptible of more than one construction, we must give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the [juvenile] court's verdict and judgment." Id. Accordingly, before an appellate court will reverse a judgment as against the manifest weight of the evidence in this context, the court must determine whether the trier of fact, in resolving evidentiary conflicts and making credibility determinations, clearly lost its way and created a manifest miscarriage of justice.
 {¶ 10} Pursuant to R.C. 2151.414(B), the juvenile court may grant permanent custody to CSB upon two separate findings, each established by clear and convincing evidence. Clear and convincing evidence is that which will produce in the trier of fact "`a firm belief or conviction as to the facts sought to be established.'" In re Adoption of Holcomb
(1985), 18 Ohio St.3d 361, 368, quoting Cross v. Ledford (1954),161 Ohio St. 469, paragraph three of the syllabus.
 {¶ 11} First, the court must find that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion. A determination of best interest is governed by R.C.2151.414(D), which provides that the court must consider all relevant factors, including:
"(1) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
"(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
"(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
"(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency[.]"
 {¶ 12} In the present case, Appellant has argued that no evidence was presented regarding the best interest of the child, and has also claimed the counselor testified that Appellant's behavior did not have an adverse impact on the child. We disagree.
 {¶ 13} As to the interactions and interrelationships of the child, the following evidence was adduced. Appellant missed one-half the scheduled visitations during the last four months. The father had not visited with the child since July 2001, did not participate in the permanent custody hearing, and has not appealed the judgment of the trial court. The child had been placed with the paternal grandmother for a period of time, but that placement was terminated and the child was placed in foster care. The paternal grandmother has not sought custody of the child. The child was reportedly doing well in his foster placement.
 {¶ 14} The wishes of the child were expressed through the guardian ad litem who recommended that permanent custody be awarded to CSB. The guardian ad litem indicated that Appellant had not made significant progress on her case plan. She has missed drug screens and mental health appointments. She missed eight scheduled visitations with the child in the last four months. The guardian ad litem expressed concern about the safety of the child if he were placed in the care of Appellant. The guardian ad litem stated that the maternal grandmother's home, where Appellant is currently residing, is very small and does not even have room for a crib. The witness stated that neither parent had been able to put the child's needs ahead of his or her own.
 {¶ 15} The custodial history of the child includes the fact that CSB had been involved with the family since the child was six months old. A safety plan was implemented at that time. The child was placed in the custody of CSB at the age of eight months, and remained there until the time of the permanent custody hearing, fourteen months later.
 {¶ 16} Accordingly, there was evidence before the trial court upon which it could conclude that it was in the best interest of the child to be placed in the permanent custody of CSB. Furthermore, the finding of the trial court is not against the weight of the evidence.
 {¶ 17} Next, the trial court is also required to find that one of the factors in R.C. 2151.414(B)(1) applies. In the present case, the trial court found that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent. See R.C. 2151.414(B)(1)(a). In making this determination, the trial court is required to consider all relevant evidence. R.C. 2151.414(E). If a juvenile court determines, by clear and convincing evidence, that one or more of the factors in R.C. 2151.414(E) exist as to each of the child's parents, then the court must find that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent. In re Thorn (Feb. 16, 2000), 9th Dist. No. 19597.
 {¶ 18} In this case, the trial court found that Appellant's chronic mental illness and chemical dependency are so severe that it makes Appellant unable to provide an adequate permanent home for the child not only at the present time, but also as anticipated, within one year after the court holds the permanent custody hearing. See R.C.2151.414(E)(2). Appellant contends that such a conclusion as to Appellant is not supported by the evidence because Appellant attended counseling sessions for over one year, was agreeable to the treatment plan, accepted the fact that she had mental health problems, and was willing to take medications and work with her counselor.
 {¶ 19} However, the evidence presented at the permanent custody hearing also establishes the following. James Mullen, psychologist at Portage Path Behavioral Health, testified that he had counseled Appellant on two occasions, most recently since February or March 2001. He stated that, at the time counseling began, Appellant had been diagnosed with schizo-affective disorder and personality disorder "not otherwise specified" with features of Cluster B which includes antisocial, borderline, and personality disorder features.
 {¶ 20} Mr. Mullen explained that the schizo-affective disorder means that Appellant has problems with regulation of mood and thought, including hallucinations and delusions. Appellant presented that she had been hearing voices, had paranoid behavior, and that she had two recent hospitalizations because she could not take care of herself. He explained her personality disorder as including ways of behaving that can get her into trouble with herself or with society. Additionally, he explained that Cluster B includes "acting out" types of personality disorders, as well as anti-social, borderline, oppositional, and histrionic behaviors. Also, Dr. Dahlen, the diagnosing doctor, reportedly indicated that Appellant had poor insight and judgment.
 {¶ 21} Appellant's mental health treatment plan was as follows: (1) take her prescribed medications, including paxil and zyprexa; (2) keep her appointments; (3) achieve mood stability; (4) resolve problems with thought disorder; and (5) improve social coping skills and reality testing. Mr. Mullen stated that Appellant had been agreeable to the plan, but that she had not completed it yet. Also, he stated that Appellant considers herself to have only bi-polar disorder or major depression. In addition, Appellant consistently stated her belief that the child was removed from her custody only because the family of the child's father did not like her. According to Mr. Mullen, Appellant's condition is a lifetime disorder and that she would be best advised to remain in treatment for the rest of her life.
 {¶ 22} Mr. Mullen explained that Appellant has made "some progress." He stated that her present level of functioning is "fair." She has the ability to take care of herself and her own needs at the present time and opined that Appellant did not pose a threat to the safety and well-being of herself or her son. However, Mr. Mullen had not seen Appellant with the child and could not speculate on her ability to care for her son.
 {¶ 23} In addition, according to the witness, Appellant continues to have difficulty with mood stability and medicine compliance. Other difficulties include the fact that she had lost her housing, and the question of whether she is abusing drugs. Based on the disruptive influences of Appellant's use of marijuana, arrests and hospitalizations, Mr. Mullen described Appellant's ability to maintain her medications and achieve stability "up to this point" so that she could take care of herself as "dicey." He concluded that based on Appellant's past performance, he expects a poor outcome into the future.
 {¶ 24} Kathy Predieri, a CSB caseworker assigned to the case in January 2001, also testified. She explained that CSB initially became involved in October 2000 based on a referral and the fact that Appellant went to the Akron Police Department, claiming that she was hearing voices that threatened her child. CSB put a safety plan into effect and left the child with Appellant because they were living with the maternal grandmother at the time. Subsequently, CSB sought custody of the child in January 2001, when Appellant took the maternal grandmother's car keys and went to Columbus with the child.
 {¶ 25} Ms. Predieri stated that she did not believe Appellant was in compliance with the mental health and drug counseling components of her case plan. Appellant was currently in mental health counseling, but missed forty to fifty per cent of her counseling sessions. She had also been sporadic with the drug counseling program. Ms. Predieri asked Appellant to provide five drug screens since January 2002, and Appellant did not comply with any of the requests. In addition, Appellant was sporadic in her visitations with the child. She was fairly compliant the first five months, but attended only one-half of the scheduled visitations since November 2001.
 {¶ 26} Carol Dresner, a chemical dependency counselor in the Community Health Center, also testified. An assessment was originally done in March 2001 and Appellant was scheduled for outpatient counseling. In June 2001, Appellant was terminated from the agency for failure to follow through with counseling. In October 2001 and following a referral from the Summit County Adult Probation Department for treatment in lieu of conviction, Appellant was re-assigned to Ms. Dresner for intensive outpatient treatment.[2] Appellant testified positive for cannabis at the time of her reassignment to the agency.
 {¶ 27} A intensive outpatient treatment plan was developed. Appellant was scheduled for therapy three times per week, weekly counseling sessions, weekly and random drug screens, and attendance at twelve-step meetings. Ms. Dresner testified that Appellant had poor compliance with individual as well as group counseling sessions. Appellant also tested positive for cannabis on November 8, 2001, January 3, 2002, and January 15, 2002. She testified positive for cannabis, cocaine, and alcohol on February 11, 2002. Ms. Dresner testified that Appellant's record fails to comply with the requirement of weekly and random drug tests. Appellant attended only five out of ten or twelve scheduled sessions from October 12, 2001 through January 30, 2002 and failed to return for more sessions after January 2002. According to the witness, Appellant failed to acknowledge the gravity or extent of her substance abuse. Ms. Dresner testified that the same issues identified in March 2001 continued to exist in January 2002.
 {¶ 28} The trial court also found that the father had demonstrated a lack of commitment toward the child, pursuant to R.C. 2151.414(E)(4). The father had not visited the child since July 2001, did not participate in the permanent custody hearing, and his whereabouts at the time of the hearing were unknown. The court's finding on this point has not been challenged.
 {¶ 29} Finally, Appellant argues that she substantially complied with her case plan. The argument is without merit. Substantial compliance with a case plan by a parent, in and of itself, does not prove that a grant of permanent custody to an agency is erroneous. In re Porter, 9th Dist. Nos. 21080 and 21089, 2002-Ohio-4860. Furthermore, as noted above, there is significant evidence indicating that Appellant has nevertheless failed to comply with her case plan.
 {¶ 30} Accordingly, Appellant's three assignments of error are without merit. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.
Judgment affirmed.
SLABY, P.J., WHITMORE, J. CONCUR
[1] Appellant's retained counsel subsequently withdrew and counsel was appointed for her.
[2] Appellant had been charged with deception to obtain a substance, adipex.